Mary Claire Heyser v. Commissioner.
Heyser v. Commissioner
Docket No. 655.
United States Tax Court
1944 Tax Ct. Memo LEXIS 203; 3 T.C.M. (CCH) 582; T.C.M. (RIA) 44213; June 14, 1944
*203 George S. Atkinson, Esq., Dallas Nat. Bank Bldg., Dallas, Tex., for the petitioner. J. Marvin Kelley, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in income tax for the year 1940 in the amount of $1,353.63. This deficiency resulted from the inclusion in the gross income of the petitioner of certain amounts paid in accordance with the provision of three life insurance policies. The sole question presented for decision is whether or not those amounts constituted taxable income to the petitioner. The facts have been stipulated. Findings of Fact The petitioner, Mary Claire Heyser, is the widow of Estill Samuel Heyser. She filed her return for the period here involved with the Collector of Internal Revenue for the second district of Texas. Estill Samuel Heyser died on March 12, 1938, leaving three life insurance policies. The first of these, No. 159211, issued on May 25, 1926, in the amount of $25,000, named petitioner as the primary beneficiary, subject to the right of the insured to change the beneficiary. The policy provided that the insured might change the mode of payment in accordance with any of several *204 specified options. By a rider dated August 14, 1934, the proceeds of the policy were made payable as follows: - $5,000 in cash to petitioner at the insured's death, the remainder to be held by the company in trust, with interest at the guaranteed rate of 3 1/2 per cent per annum and such additional interest as might be apportioned by the company from surplus interest earnings to be added at the end of each year to the fund held in trust. The rider provided that the trust fund should be paid to petitioner in monthly installments of $100.00 each, beginning one month from the date of the insured's death and continuing until the trust fund should be exhausted, with the provision that petitioner should have the right and option of withdrawing from the fund from time to time additional amounts not exceeding $2,500 in any one year while the trust fund should be sufficient to permit such withdrawals. The rider further provided that if petitioner should die before all of the trust fund should have been exhausted, the remainder should be paid to the insured's son, in a specified manner, or, in case of the son's death, to the insured's estate. Upon the death of E. S. Heyser the policy was *205 surrendered and cancelled and a contract was issued by the company whereby it promised to pay $20,000, with interest, in accordance with the terms of the rider, the first monthly installment of $100.00 being payable on April 12, 1938. During the taxable year 1940 the company paid to petitioner $1,200 under the provisions of this policy and on April 12, 1940, added to the trust fund interest in the sum of $756.29, of which $662.06 represented interest at the guaranteed rate of 3 1/2 per cent per annum and $94.23 represented additional surplus interest allowed by the company. The second policy, No. 159214-T, also issued on May 25, 1926, in the amount of $25,000, named the insured's estate as beneficiary subject to the right of the insured to change the beneficiary. By a rider dated August 14, 1934, it was provided that the proceeds of the policy should be held by the company in trust, and interest thereon at the guaranteed rate of 3 1/2 per cent per annum and such additional interest as might be apportioned by the company from surplus interest earnings, should be paid in monthly installments to petitioner so long as she lived. The rider further provided that upon the death of petitioner, *206 the trust fund should be held for the benefit of the insured's son, or paid over to him, or to insured's estate, according to specified conditions. Upon the death of E. S. Heyser this policy was surrendered and cancelled and a contract was issued by the company whereby it promised to pay petitioner interest as specified in the rider, so long as she should live, and after her death to discharge the trust in accordance with the provisions of the rider. The contract provided that the interest would be paid monthly as it accrued, the first payment to be made on May 15, 1938. During the taxable year 1940 the company paid to petitioner $981.00 under the provisions of this policy, being interest at the guaranteed rate of 3 1/2 per cent per annum in the amount of $876.00 and additional interest allowed by the company in the amount of $105.00. The third policy, No. 291110, issued on May 25, 1932, in the amount of $20,000, named the insured's mother as primary beneficiary, subject to the right of the insured to change the beneficiary. By a rider dated August 14, 1934, it was provided that the proceeds of the policy should be paid to the insured's mother in monthly installments of $150.00 *207 each, until the entire proceeds of the policy, with interest as therein specified, had been paid. The rider provided that interest at the guaranteed rate of 3 1/2 per cent per annum and such additional interest as might be apportioned by the company from surplus interest earnings would be allowed by the company and added at the end of each year to the amount remaining in the hands of the company. The rider further provided that after the death of insured's mother the payments would be made to petitioner, and after petitioner's death to insured's son or his estate in accordance with specified conditions. Upon the death of E. S. Heyser the third policy was surrendered and cancelled and a contract was issued by the company whereby it promised to pay the proceeds of the policy in accordance with the provisions of the rider. Estill Heyser's mother died some time prior to the year 1940. During the taxable year 1940 the company paid to the petitioner $1,800 under the provisions of this policy and added to the balance remaining in its hands $712.54, being interest at the guaranteed rate of 3 1/2 per cent per annum of $623.65 and additional interest allowed by the company in the amount of *208 $88.89. On her income tax return for 1940 the petitioner reported as nontaxable income from the insurance contracts the amount of $2,449.83, which is the sum of the amounts of interest above set forth. In the statutory deficiency notice this amount was added to taxable income. Opinion ARUNDELL, Judge: The sole question posed and argued by counsel for the respective parties is whether or not the amount of $2,449.83 represents exempt income under section 22 (b) (1) of the Internal Revenue Code. That section reads as follows: Exclusions from Gross Income. - The following items shall not be included in gross income and shall be exempt from taxation under this chapter: "(1) Life Insurance. - Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income)." The respondent contends that the amounts in question fall within the parenthetical phrase of the above quoted section and argues that in this contention he is squarely supported by United States v. Heilbroner, 100 Fed. (2d) 379, *209 and Edith M. Kinnear, 20 B.T.A. 718. In the Heilbroner case, supra, the petitioner was the beneficiary of certain insurance policies by the terms of which the insurer was to pay annually to her for life a guaranteed sum equal to 3 per cent of the face value of the policies and such additional sums as might be apportioned to her by the insurer, the proceeds of the policies to be retained by the insurer until her death and then distributed to others. Amounts paid under the policies were held to be taxable income. In our opinion this case is controlling as to the payments received by the petitioner under the second policy described in our findings of fact. The amount of $981 paid to the petitioner under policy No. 159214-T and the deferred payment agreement issued in accordance therewith, we hold, was taxable to the petitioner. Under the first and third policies set forth in our findings of fact the beneficiary was to be paid fixed monthly installments as long as the funds should last and not, as in the case of the second policy, simply the interest on the face amount of the policy left with the insurer. It is true that to the balance of the *210 funds each year was to be added interest at the rate of 3 1/2 per cent and such additional interest as might be apportioned by the insurer from surplus interest earnings. Although the amounts ultimately payable are thereby greater than the amounts that would have been payable in a lump sum if the insurer had not exercised his options, we think that the monthly installments received by the petitioner were "amounts received under a life insurance contract paid by reason of the death of the insured * * *." Commissioner v. Winslow, 113 Fed. (2d) 418, affirming 39 B.T.A. 373; Commissioner v. Bartlett, 113 Fed. (2d) 766; Commissioner v. Buck, 120 Fed. (2d) 775, affirming 41 B.T.A. 99; Allis v. LaBudde, 128 Fed. (2d) 838; and Kaufman v. United States, 131 Fed. (2d) 854. This conclusion is consonant with the position taken in General Counsel's Memorandum 23523 ( 1943 Internal Revenue Bulletin, No. 6, p. 9) in which it was stated that "under section 22 (b) (1) of the Internal *211 Revenue Code and corresponding sections of the Revenue Acts of 1934, 1936, and 1938, there should be excluded from gross income not only the principal sum or capital value of a life insurance policy as of the date of death of the insured, but also any amounts added to such principal sum (when it is paid in installments), pursuant to an option exercised by the insured, by reason of the running of time." On authority of the above cited cases we hold that the payments made to petitioner under the first and third policies are not taxable to her under section 22 (b) (1) of the Internal Revenue Code. While what we have already said serves to dispose of the issues it may not be amiss to point out that it is at least questionable whether the petitioner has actually received or been credited with the amounts here in controversy under the first and third policies. The stipulation of facts has been drawn and the case argued upon the theory that what the petitioner was actually paid represented proceeds of the policies and that the interest was credited to the balances still with the insurer. The petitioner's right to this interest would appear to be purely contingent upon her survival. In the *212 circumstances it would seem doubtful, in any event, that the interest could be held to constitute income to the petitioner in the year 1940. Decision will be entered under Rule 50.